# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ALLAN AUGUST ZIMNEY, as Trustee for the Next-Of-Kin of Lanie J. Zimney, Decedent, | Case No. 24-CV-1645 (NEB/LIB) |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION TO DISMISS |
| v. | |
| ULTA SALON, COSMETICS & FRAGRANCE, INC., | |
| Defendant. | |

---

When Decedent Lanie Zimney was hired by Ulta in January 2019 to work as a designer and licensed cosmetologist at the Ulta salon in St. Cloud, Minnesota, both sides envisioned a mutually beneficial employment relationship. At first, Ulta allowed Zimney to work with various disability accommodations, including the use of a service dog. But in the ensuing months, the relationship between the parties soured, culminating in a May 2019 incident in which Zimney was allegedly escorted from the workplace and suspended without full compensation until she could provide medical documentation for her requested accommodations.

Following this incident, in June 2019, Zimney filed an administrative charge concurrently with the Minnesota Department of Human Rights ("MDHR") and with the Equal Employment Opportunity Commission ("EEOC"), alleging disability and sex

discrimination and retaliation by Ulta. Zimney eventually returned to Ulta in August 2019, albeit with a changed work schedule and with fewer available benefits. After working just two shifts in August 2019, Zimney's employment ended. Zimney passed away in 2020.

In the Amended Complaint, Trustee Allan Zimney, as next of kin for Decedent Lanie Zimney (collectively, "Zimney"), challenges Ulta's alleged conduct under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and the Minnesota Human Rights Act. (ECF No. 5 at 19–30[1].) Ulta requests that the Court dismiss Zimney's claims to the extent that the claims are based on a theory of constructive discharge, which Ulta argues is barred as a matter of law. (ECF No. 11 at 2.) Ulta also asks that the claims be dismissed, in full, for failing to state a claim for relief on the face of the pleadings. (*Id.*) For the reasons below, Ulta's motion to dismiss Zimney's Amended Complaint[2] (ECF No. 9) is granted in part and denied in part. Claims based on the constructive discharge theory are barred; the remaining claims survive the motion to dismiss.

---

[1] Page citations reference ECF page numbers unless otherwise noted.

[2] Ulta brought this motion as a combined motion to dismiss the Amended Complaint and motion to stay discovery. (ECF No. 9.) The Court ruled from the bench on the motion to stay discovery on September 11, 2024, denying the motion. (ECF No. 19.) This Order addresses only Ulta's motion to dismiss.

## BACKGROUND[3]

Zimney was hired by Ulta as a Designer and Licensed Cosmetologist at Ulta's Saint Cloud, Minnesota salon in January 2019. (ECF No. 5 ¶¶ 17–18, 36.) Prior to her employment, Zimney disclosed to Ulta "the existence of multiple, chronic disabling physical and mental conditions," including "bipolar II disorder, conversion disorder . . . hip dysplasia and fibromyalgia." (*Id*. ¶ 21.) Zimney requested accommodations, including the use of a service dog, the ability to have a water bottle at the workstation, and the use of a saddle chair. (*Id*. ¶¶ 22, 34.) Ulta's then-manager approved of these accommodations with "no lengthy 'interactive process.'" (*Id*. ¶ 32; *see id*. ¶¶ 28–30, 34.)

For the first four months, Zimney worked "productively and successfully," and Ulta had minimal issues with her accommodations.[4] (*Id*. ¶ 37; *see id*. ¶¶ 41, 55; ECF No. 12-

---

[3] The Court draws the following background from Zimney's Amended Complaint, accepting as true all factual allegations and drawing all reasonable inferences in Zimney's favor as the nonmovant. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

[4] Zimney's Amended Complaint states that "Ulta had no issues" with Zimney's accommodations during the first four months of her employment. (ECF No. 5 ¶ 37.) But the administrative charge that Zimney filed in June 2019 seemingly contradicts this narrative—describing an instance in February 2019 where Zimney "had a severe increase in [her] disabling symptoms," and was "disciplined for disrupting" the employer's training class. (ECF No. 12-1 at 2.) The Court may consider the allegation in the June 2019 Charge, because courts may review documents embraced by the pleadings or that are public records, in evaluating a Rule 12(b)(6) motion to dismiss. *See Henke v. Allina Health Sys.*, 698 F. Supp. 2d 1115, 1122 (D. Minn. 2010) (considering "the MDHR and EEOC charges of discrimination, the MDHR's probable-cause Memorandum, and documents concerning the withdrawal of the charges prior to filing suit").

1 at 2.) In May 2019, Zimney disclosed to Ulta that she was pregnant and "requested to make a small adjustment to an already-existing accommodation." (ECF No. 5 ¶ 40.) Following this disclosure, Ulta withdrew Zimney's accommodations and "told [her] that she was required to complete medical forms for each accommodation," and that her pre-existing medical documents were insufficient. (*Id*. ¶¶ 42–43; *see id*. ¶ 47; ECF No. 12-1 at 2.) Zimney believes that certain managers at Ulta "harbored animus and skepticism regarding Ms. Zimney's accommodations" and "questioned . . . the authenticity of Ms. Zimney's need for a service dog." (ECF No. 5 ¶¶ 44–45.)

Within one day of this pregnancy disclosure and the revocation of the disability accommodations, on or about May 29, 2019, "Zimney was escorted off the property and told that she could not return to work until Ulta received the onerous medical documentation to substantiate [the accommodations]." (*Id*. ¶ 46; *see* ECF No. 12-1 at 2.) Because it was difficult for Zimney to satisfy Ulta's specific demands for medical documentation, she was effectively "suspend[ed] for months, most of which was without compensation." (ECF No. 5 ¶ 57; *see id*. ¶¶ 48, 58–59; ECF No. 12-1 at 2.)

On June 19, 2019, Zimney concurrently filed an administrative charge with the MDHR and the EEOC (the "June 2019 Charge") asserting a continuing action for (1) disability discrimination; (2) sex discrimination; and (3) retaliation. (ECF No. 5 ¶ 13; ECF No. 12-1 at 2.) The June 2019 Charge recounted, in brief, the above factual allegations. (ECF No. 12-1 at 2.) But the June 2019 Charge did not allege constructive discharge. (*Id*.)

After three months of "back and forth with Ulta HR via email and phone," Ulta "ultimately caved" and accepted the medical documentation that Zimney had said she possessed all along. (ECF No. 5 ¶ 59.) Then, in August 2019, Zimney "returned to work for approximately two shifts." (*Id.* ¶ 60.) At that time, Zimney's work schedule was altered to remove Zimney from weekday schedules on Tuesdays and Wednesdays and to require Zimney to work one night shift per week. (*Id.* ¶¶ 62–63.) Because of this alteration to her work schedule, Zimney "slip[ped] beneath the hours threshold to receive Ulta-provided fringe benefits like medical care." (*Id.* ¶ 64.) At some point after working those two shifts in August 2019, Zimney's employment ended.[5] (*Id.* ¶ 65.) Zimney later passed away. (*Id.* ¶ 71.)

On April 12, 2023, the EEOC issued a Determination Letter on the June 2019 Charge. (ECF No. 12-1 at 6.) The Determination Letter included the following language:

> I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that [Ulta] discriminated and retaliated against [Zimney] based on disability and sex (pregnancy), by suspending her, denying her reasonable accommodation and demoting her, in violation of the ADA and Title VII.

(*Id.*; ECF No. 5 ¶ 14.) The next year, on February 9, 2024, the EEOC issued Zimney a "Right to Sue" letter, and Zimney brought this suit. (*Id.* ¶ 15.)

---

[5] At no point does the Amended Complaint ever specify when or how Zimney's employment ended; it merely states a legal conclusion that "[a]t that point, the earlier constructive discharge was simply confirmed." (ECF No. 5 ¶ 65.) The Court makes the reasonable inference from this pleading that at some point after working two shifts in August 2019, Zimney's employment ended. (ECF No. 15 at 33.)

Zimney's eight-count Complaint brings claims for: disability discrimination under Title I of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA") (Counts I and V); failure-to-accommodate a disability under the ADA and MHRA (Counts II and VI); retaliation and reprisal under the ADA and MHRA (Counts III and VII); and sex discrimination under Title VII of the Civil Rights Act of 1964 and the MHRA (Counts IV and VIII). (*Id.* ¶¶ 72–113.) Zimney asserts that these claims arise from a list of adverse employment practices by Ulta, including constructive discharge. (*Id.* ¶¶ 75, 85, 90, 97.)

## ANALYSIS

Ulta first moves to dismiss each of the claims made in Zimney's Amended Complaint to the extent they rest on allegations of constructive discharge, arguing that Zimney failed to exhaust administrative remedies, timely assert constructive discharge, or plausibly state a claim. (ECF No. 9 ¶ 1; ECF No. 11 at 2.) Ulta also seeks to dismiss, in full, Zimney's failure-to-accommodate claims (Counts II and VI), retaliation and reprisal claims (Counts III and VII), and sex discrimination claims (Counts IV and VIII). (ECF No. 9 ¶ 2; ECF No. 11 at 2.) This Court agrees with Ulta on the issue of constructive discharge and disagrees as to the rest.

### I.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires courts to dismiss a claim if it fails to plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## II.    Administrative Exhaustion of Constructive Discharge Allegations for Federal Claims

To the extent that Zimney's federal claims are based on the allegation that Ulta constructively discharged Zimney, the claims must be dismissed for failure to exhaust administrative remedies.

Claims brought under Title I of the ADA and under Title VII of the Civil Rights Act of 1964 must be administratively exhausted. *Randolph v. Rodgers*, 253 F.3d 342, 347 n.8 (8th Cir. 2001). Under these statutory provisions, a plaintiff is deemed to have exhausted administrative remedies if the plaintiff timely filed an administrative charge encompassing the allegations made in the complaint, and the EEOC (or the relevant state or local agency) issued a right-to-sue letter. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850–51 (8th Cir. 2012). The Congressional purpose for the exhaustion requirement is "to assist in the investigation of claims of . . . discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." *Id*. at 850 (citation omitted).

The Eighth Circuit recognizes an exception to this administrative exhaustion requirement for acts occurring after the filing of the administrative charge that are "like or reasonably related to the administrative charges." *Wedow v. City of Kansas City*, 442 F.3d 661, 672 (8th Cir. 2006) (citing *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986)). The rationale for this exception is one of notice. Because the filing of an administrative charge is intended to help facilitate conciliation by "giv[ing] the employer notice of the subject matter of the charge and identify[ing] generally the basis for a claim," it follows that the employer may be considered fairly on notice of reasonably related claims. *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 899 (8th Cir. 2024) (citation omitted).

But the scope of this reasonable-relatedness exception is limited by Supreme Court precedent. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (holding that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" under Title VII). In light of *Morgan*, the Eighth Circuit "has narrowed its view of what subsequent acts are sufficiently related to be within the scope of the properly filed administrative charges," but it "ha[s] not wholly abandoned the theory that reasonably related subsequent acts may be considered exhausted." *Wedow*, 442 F.3d at 673; *contra Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. 2009) ("The 'reasonable relation' theory is no longer good law in cases involving discrete, easily identifiable incidents.").

The central dispute between the parties is whether Zimney's constructive discharge claim is administratively exhausted under the reasonable-relatedness exception. For this, the Court must examine: (1) when, if ever, did a claim for constructive discharge vest for Zimney; and (2) if the constructive discharge claim vested after the filing of the June 2019 Charge, is it reasonably related to the acts alleged in the Charge.[6]

### A.    Timing of When a Constructive Discharge Claim Vests

According to Zimney, her claim for constructive discharge vested "as early as" May 29, 2019, when she was "ousted" from the workplace and "effectively suspended largely without pay." (ECF No. 15 at 25.) Zimney also claims that Ulta merely "purported to welcome [her] back in August 2019," and that the alterations to her work schedule and benefits eligibility simply "confirm[ed] a constructive discharge" that had already taken place. (*Id.* at 9.) In the alternative, Zimney argues her claim for constructive discharge vested "as late as the continuing, retaliatory acts alleged post-charge that are 'like' or 'reasonably related to' the retaliation alleged on the face of her charge."[7] (*Id.* at 25–26.) In response, Ulta argues that a constructive discharge claim could not have vested for

---

[6] The inquiry into whether Zimney's claim for constructive discharge was reasonably related to the claims made in the June 2019 Charge may well differ depending on whether the alleged constructive discharge occurred prior to, or after, the filing of the Charge. Thus, evaluating when a constructive discharge claim may have vested for Zimney is a threshold question that necessarily precedes the administrative exhaustion analysis.

[7] The Federal Rules of Civil Procedure allow for a plaintiff to plead alternative statements of a claim, even if they are inconsistent, so long as the pleading for any one of them is sufficient. *See* Fed. R. Civ. P. 8(d)(2)–(3).

Zimney in May 2019 because Zimney's and Ulta's conduct through August 2019 evidenced an understanding of a continuing employment relationship. The Court concludes that assuming Zimney has a claim for constructive discharge, it did not vest until after her employment ended with Ulta, following her two shifts worked in August 2019.

A constructive discharge is a type of adverse employment action recognized under the ADA and Title VII. *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 825 (8th Cir. 2006) (analyzing constructive discharge claim under the ADA); *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023) (same, under Title VII). To make out a claim for constructive discharge, a plaintiff must prove two elements: (1) the plaintiff "was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign," and (2) the plaintiff "actually resigned." *Norgren v. Minn. Dep't of Hum. Servs.*, 96 F. 4th 1048, 1056 (8th Cir. 2024) (citing *Green v. Brennan*, 578 U.S. 547, 555 (2016)). Put differently, "an employee cannot bring a constructive[ ]discharge claim until [s]he is constructively *discharged*." *Green*, 578 U.S. at 555. For that reason, the Eighth Circuit recognizes that the timeliness clock on a claim of constructive discharge runs from the point of discharge, and not from the moment at which the pattern of intolerable conduct culminating in the discharge began. *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Loc. No. 101*, 3 F.3d 281, 285 (8th Cir. 1993). Thus, a

claim for constructive discharge does not vest until after the employment relationship has actually ended. *Green*, 578 U.S. at 555.

Despite Zimney's argument that her claim for constructive discharge vested in late May 2019, the facts as alleged demonstrate that her employment ended at a later date—after she worked the two shifts in August 2019:

- Zimney considered the period between on or about May 29, 2019 and August 2019 to merely be "a suspension for months, most of which was without compensation," which raises the necessary inference that Zimney was provided at least some compensation during that period. (ECF No. 5 ¶ 57.)

- Zimney alleged in the June 2019 Charge that she "ha[d] not been allowed to return to work despite attempts to provide medical documentation," implying that she was trying to return to work. (ECF No. 12-1 at 2.)

- Zimney communicated "back and forth with Ulta HR via email and phone" about the requested accommodations to her employment "before Ulta ultimately caved." (ECF No. 5 ¶ 59.)

- Zimney returned to her workplace at Ulta "to work for approximately two shifts in August 2019." (*Id*. ¶ 60.)

Thus, Zimney's constructive discharge claim vested when her employment relationship with Ulta actually terminated in August 2019, which was after filing of the June 2019 Charge.

11

**B.** **Reasonable-Relatedness Exception to the Administrative Exhaustion Requirement**

Whether Zimney's August 2019 constructive discharge claim was administratively exhausted turns then on whether it was "reasonably related to" the continuing allegations made in the June 2019 Charge. Zimney argues that the claim for constructive discharge was reasonably related to the allegation of continuing retaliation made in the June 2019 Charge. Ulta disagrees, arguing that Zimney's alleged constructive discharge was based on Ulta changing her work schedule and limiting her qualification for fringe benefits in August 2019—and not because of any prior alleged discrimination and retaliation, which had already been redressed. Ulta thus reasons that any alleged constructive discharge was a discrete act of retaliation, which was not reasonably related to the continuing retaliation previously alleged in the June 2019 Charge.

The Court agrees with Ulta. Zimney's constructive discharge claims are not reasonably related to the allegations of a continuing violation included in the June 2019 Charge, because Ulta fully redressed the continuing nature of that alleged violation by accepting Zimney's medical documentation for her requested accommodations and by allowing Zimney to return to work in August 2019. And so, Zimney's claim for constructive discharge is not reasonably related to the adverse acts that gave rise to the June 2019 Charge, but rather it derived from discrete, post-charge acts of alleged retaliation.

1.      *Reasonable-Relatedness Factors*

Because the Eighth Circuit has "considerably narrowed" its view on the scope of the reasonable-relatedness exception, *see Wedow*, 442 F.3d at 672, courts in this Circuit do not apply the exception as a matter of course. Rather, the Court has gleaned from case law four factors to consider in determining whether the exception applies:

(1) whether the allegations made in the administrative charge and the post-charge allegations pertain to the same discrete type of employment practice;

(2) whether the post-charge allegations are temporally proximate to the filing of the charge;

(3) whether the administrative charge gives notice that the post-charge event is likely to occur; and

(4) whether the allegations made in the administrative charge and the post-charge allegations arise from the same discrete employer conduct.

This Court elaborates on each of these considerations, in turn.

First, post-charge allegations generally fall within the scope of the exception if they are identical to, or necessarily follow from, the type of claims alleged in the charge. For example, when "[t]he claims in the judicial complaint . . . [a]re not based on separate, distinct, or unrelated theories of retaliatory discrimination or action," a post-charge retaliation claim may survive if the administrative charge included a claim for continuing retaliation. *Wedow*, 442 F.3d at 674. Similarly, if one type of adverse action alleged in a

charge makes it "inevitable" that another type of action will occur post-charge, the claims based on the inevitable type of post-charge employment action will be recognized as exhausted. *Ringhofer*, 102 F.4th at 899 (holding that when an employment policy and accompanying guidance "make termination inevitable," an EEOC charge filed on the policy administratively exhausted the post-charge termination). By contrast, where the claims in the administrative charge and the post-charge allegations are of a different type, the reasonable-relatedness exception does not apply.[8] *See Richter*, 686 F.3d at 851 (upholding the dismissal of post-charge retaliation allegations when the EEOC charge only alleged unlawful discrimination); *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020,

---

[8] Zimney cites two district court cases from within the Circuit for the proposition that a retaliation claim can be exhausted even when a plaintiff does not expressly claim retaliation or mark the retaliation box as the type of adverse action on the administrative charge. (ECF No. 15 at 23–24 (citing *Henke*, 698 F. Supp. 2d at 1124; *Schmit v. Trimac Transp. Inc.*, No. 5:23-CV-05014-CBK, 2023 WL 3979023, at *3 (D.S.D. June 13, 2023)).) In *Henke*, the court determined that the allegations in the charge "sufficiently alluded to" the prima facie elements for a claim of retaliation even though the charge did not expressly assert retaliation. 698 F. Supp. 2d at 1124. But *Henke* is distinguishable. In *Henke*, the plaintiff was "not attempting to assert retaliation claims based on acts that occurred *after* filing an EEOC charge"; rather, the plaintiff had "not file[d] her charge until after her employment with [the employer] had ended." *Id.* at 1125. Put differently, the plaintiff in *Henke* was challenging whether her *pre*-charge—and not *post*-charge—claims were administratively exhausted even though they were not expressly asserted in the EEOC charge. In *Schmit*, the plaintiff did not mark the box on the administrative charge for retaliation, but the court considered that the factual allegations laid out in the charge were sufficient to "suggest retaliation and hostile work environment resulting from being disabled and seeking disability accommodations." 2023 WL 3979023, at *3. As most relevant here, the charge in that case made a specific factual reference that the plaintiff "was constructively discharged." *Id*. In any event, this case is mere persuasive authority and is not binding precedent on this Court.

1025 (8th Cir. 2004) (holding that a post-charge harassment claim was not reasonably related to the administrative charge alleging retaliation), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043, 1059 (8th Cir. 2011).

Second, as to temporal proximity, when there is little intervening time between the filing of the administrative charge and the subsequent alleged conduct, courts are more apt to apply the reasonable-relatedness exception. *See Ringhofer*, 102 F.4th at 900 (holding that post-charge termination claims could proceed when the terminations took place "less than a month" and "less than a week" after the administrative charge was filed). In contrast, where months or more elapse between the filing of the charge and the post-charge conduct, courts are less likely to recognize the claims as reasonably related. *See Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1082 (8th Cir. 2021)[9] (disallowing a post-charge constructive discharge claim where approximately nine months passed between the charge and the alleged constructive discharge); *Slayden*, 53 F.4th at 469[10] (affirming

---

[9] *Henson* was a diversity jurisdiction dispute that involved only state-law claims brought under Missouri state employment law. *Henson*, 3 F.4th at 1081 ("[I]n deciding a case under the [Missouri Human Rights Act], state appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." (citation omitted).) The Eighth Circuit has since confirmed that in reaching its holding in *Henson*, it "relied on Supreme Court and Eighth Circuit authority." *Slayden v. Ctr. for Behav. Med.*, 53 F.4th 464, 469 n.5 (8th Cir. 2022). The Court thus considers *Henson* to be persuasive authority for evaluating administrative exhaustion issues under federal law within the Eighth Circuit.

[10] At oral argument, Zimney asserted that *Slayden*—which was decided on a motion for summary judgment—was irrelevant. Zimney pointed out that discovery in *Slayden* had revealed that the plaintiff had admitted that their superior, who "was the only person

judgment against the plaintiff on his constructive discharge claim when the plaintiff "did not resign from [the employer] until approximately five months after he filed his charge").

Third, in determining whether to apply the reasonable-relatedness exception, courts consider whether the administrative charge provided notice to the parties and to the administrative agency that the post-charge event could reasonably be expected to occur. *See id*. ("[T]he civil suit can be only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." (citing *Fanning v. Potter*, 614 F.3d 845, 852–53 (8th Cir. 2010)). An administrative charge gives notice of a likely post-charge event when the allegations in the charge "were specified to be of an ongoing and continuing nature," and supported by specific descriptions of the continuing nature of the violation. *See Wedow*, 442 F.3d at 674 (noting

---

who discriminated against him," had done nothing "retaliatory, discriminatory, or harassing" after the plaintiff filed the charge in August 2018, even though the complaint alleged retaliation through October 2018. 53 F.4th at 466. But the post-charge allegations in the complaint raised new and separate allegations pertaining to three other incidents of retaliation by the employer's human resources department and an allegation of constructive discharge. *Id*. at 466–67. It was these separate post-charge allegations that the Eighth Circuit considered in its administrative exhaustion analysis in *Slayden*—not any allegations of post-charge discrimination or retaliation by the plaintiff's superior. *Id*. at 468–69. The Eighth Circuit determined that the post-charge retaliation claims stemming from the human resources department's actions and the constructive discharge claim were unexhausted because the original administrative charge included no allegations of retaliation by human resources or any indication of an impending constructive discharge. *Id*. Rather, the administrative charge only focused on the plaintiff's superior's pre-charge discriminatory conduct. *Id*. The Court therefore considers *Slayden* to still be relevant and binding authority.

that "the allegations in the . . . EEOC charges filed in this case spoke of acts occurring in the present and specifically alleged future implications as well"). But conclusory allegations in the administrative charge or "merely checking a form's 'continuing violation' box" are insufficient to provide notice. *Henson*, 3 F.4th at 1082; *see also Slayden*, 53 F.4th at 469 (holding that the plaintiff's "charge gave no indication that he was about to be constructively discharged," even though the charge indicated the discrimination allegation was a "continuing action").

Finally, the post-charge allegations must arise from the same or similar employer conduct alleged in the charge for the reasonable-relatedness exception to apply. Thus, the Eighth Circuit applied the exception in a case in which the plaintiffs' charge and post-charge claims each alleged the same, continuing adverse conduct by the employer of not permitting the plaintiffs to serve in additional shift designations. *Wedow*, 442 F.3d at 674; *see also Merfeld v. Warren Cnty. Health Servs.*, 597 F. Supp. 2d 942, 958 (S.D. Iowa 2009) (applying the exception when the plaintiff "list[ed] the same conduct" in their complaint as was alleged in their administrative charge, because the plaintiff alleged that after filing the charge, "the *same* retaliatory conduct continued"). In contrast, courts seldom apply the reasonable-relatedness exception when a plaintiff introduces a new, factually-distinct allegation of employer misconduct in the complaint that was not raised in the original administrative charge. *See Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 623 (8th Cir. 2019) ("By not including in his EEOC charge the adverse acts which he maintains

forced him to resign, [plaintiff] failed to administratively exhaust his constructive discharge allegation."); *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (determining that post-termination refusal-to-hire claims raised in the complaint were not reasonably related to the claim in the administrative charge that "specifically mentioned only one incident in which [the plaintiff] applied for an open position . . . and was rejected," which took place before the plaintiff was terminated).

2.    ***Relatedness of Zimney's Post-Charge Allegations to the June 2019 Charge***

In the June 2019 Charge, Zimney alleged continuing violations in the form of (1) disability discrimination, (2) sex discrimination, and (3) retaliation. (ECF No. 5 ¶ 13; ECF No. 12-1 at 2.) The Charge followed from the incident on or about May 29, 2019, in which Zimney was allegedly "escorted off the property [by Ulta] and told that she could not return to work" until she provided substantiation for her disability and pregnancy accommodation requests. (ECF No. 5 ¶ 46.) The Charge was thus filed in response to: (1) alleged disability discrimination (for Ulta's revocation of the requested accommodations absent medical documentation); (2) sex discrimination (for Ulta's refusal to recognize the requested adjustment to the accommodations for Zimney's pregnancy and for Ulta effectively suspending Zimney after disclosing her pregnancy); and (3) retaliation (for Ulta suspending Zimney without full compensation until she provided medical documentation to substantiate her accommodation requests). (ECF No. 12-1 at 2.)

But, as Zimney acknowledges, the continuing nature of each of those violations was fully redressed in August 2019 when "Ulta ultimately caved, claiming to accept the medical documents Ms. Zimney had said she possessed from the beginning." (ECF No. 5 ¶ 59.) At that point, Ulta was no longer withholding the accommodations, and Zimney was allowed to return to work, which she did for two shifts. (*Id*. ¶¶ 59–60.) In the Amended Complaint, Zimney alleges that Ulta only "purport[ed] to welcome [her] back to work," and raises new and distinct allegations of retaliation that Ulta changed her schedule dramatically, which resulted in a change to her employment benefits. (*Id*. ¶ 63; *see id*. ¶¶ 63–65.) But these allegations are absent from the June 2019 Charge. (ECF No. 12-1 at 2.)

The Court concludes that the reasonable-relatedness exception to the administrative exhaustion requirement does not apply to Zimney's claims for constructive discharge.

First, constructive discharge is a discrete type of adverse employment practice that is distinct from (and does not necessarily follow from) the type of claims identified in the June 2019 Charge for disability and sex discrimination and retaliation. *See Slayden*, 53 F.4th at 469 ("A constructive discharge is a discrete act of discrimination or retaliation that stands separate and distinct from the continuing violation of a hostile work environment." (citation omitted)); *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 920 (8th Cir. 2018) ("[T]ermination is a 'discrete act' that constitutes an actionable

adverse action."). At oral argument, Zimney argued that constructive discharge is just one form of retaliation, more generally. Even so, constructive discharge is a discrete sub-type of retaliation that is different in kind from other run-of-the-mill retaliation allegations. *See Slayden*, 53 F.4th at 468–69 (analyzing separately the plaintiff's general post-charge retaliation allegations against the employer's human resources department from the plaintiff's specific constructive discharge allegations).

Second, approximately two months[11] passed between Zimney's June 2019 Charge and the end of her employment. This temporal proximity factor is inconclusive, as two months is neither as temporally proximate as the less-than-a-month proximity in *Ringhofer*, 102 F.4th at 900, nor is it as temporally remote as the five- and nine-month gaps in *Slayden*, 53 F.4th at 469, and *Henson*, 3 F.4th at 1082, respectively.

Third, aside from checking the "continuing violation" box on the June 2019 Charge, the only specific ongoing factual allegation made in the Charge was that Zimney had "not been allowed to return to work despite attempts to provide medical

---

[11] Because the Amended Complaint does not specify the dates in August 2019 when Zimney worked her two shifts for Ulta, or when (let alone how) Zimney's employment ended after those two shifts, the Court cannot provide an exact temporal range for this analysis. For sake of argument, the Court makes the reasonable inference from the pleadings that Zimney's employment ended sometime in August 2019. (ECF No. 5 ¶¶ 60, 62–65.) Because Zimney filed the Charge on June 19, 2019, the temporal range between the administrative charge and the post-charge allegations could be as little as a month-and-a-half to as long as almost two-and-a-half months.

documentation." (ECF No. 12-1 at 2.) Whatever other notice it may provide, that allegation does not put Ulta on notice that a constructive discharge claim will follow.

Fourth, the conduct of continuing retaliation alleged in the June 2019 Charge—Zimney being unable to return to work until she provided the requested documentation—is different in kind from the alleged retaliatory conduct that facilitated the end of Zimney's employment—Zimney's work shift schedule and fringe benefits changing. (*Compare* ECF No. 12-1 at 2 *with* ECF No. 5 ¶¶ 62–65.) Thus, this case resembles *Voss*, in which the Eighth Circuit held that a claim for constructive discharge was not reasonably related to the prior administrative charge that only alleged that the plaintiff was placed on suspension with the threat of discharge. *See* 917 F.3d at 623 (reasoning that because the administrative charge said "*nothing* about" the employer revoking the plaintiff's duties, which was the only adverse conduct that the plaintiff "maintains forced him to resign," the charge did not exhaust the post-charge claim for constructive discharge).

Zimney argues that *Fosness v. Minnesota Sex Offender Program* is "on all fours" with the present litigation. (ECF No. 15 at 21 (citing No. CV-20-1511 (JRT/LIB), 2021 WL 698731, at *6 (D. Minn. Feb. 23, 2021)).) But *Fosness* demonstrates why Zimney's claims for constructive discharge must be dismissed.

In *Fosness*, the post-charge retaliatory acts that gave rise to the constructive

discharge were "of identical character" to those alleged in the charge itself.[12]

> [W]ith respect to allegations concerning her constructive discharge, the
> retaliatory acts alleged to have forced [the plaintiff] to resign are either
> those alleged in the Amended 2017 Charge or those of identical character
> alleged in the Amended Complaint. Further, *only these adverse acts, and no
> others*, are alleged to have created the intolerable working conditions that
> resulted in [the plaintiff]'s constructive discharge.

*Id*. (emphasis added). Significantly, *Fosness* cited by contrast to *Voss* for the proposition

"that a plaintiff who failed to allege the adverse acts that forced him to resign could not

administratively exhaust his constructive discharge allegation." *Id*. (citing *Voss*, 917 F.3d

at 623).

Here, the adverse facts that forced Zimney to resign (the changed shift schedule

and benefits) are different in kind from the adverse facts underpinning the continuing-

violation allegations in the June 2019 Charge. To the extent that each of Zimney's federal

---

[12] Each of the other district court cases that Zimney cites as persuasive authority follow analogous reasoning to *Fosness* to conclude that post-charge allegations were reasonably related to the allegations in the administrative charge because they were each premised on the exact same underlying employer conduct. *See Merfeld*, 597 F. Supp. 2d at 958 (noting how the plaintiff "lists the same conduct in her [post-charge] retaliation claim"); *Wallace v. Interbake Foods, LLC*, 973 F. Supp. 2d 1067, 1076 (D.S.D. 2013) ("[T]he alleged retaliations were not based on new theories but instead were the result of the 'same type of work experiences' that caused the parties to file the initial charges." (citing *Wedow*, 442 F.3d at 674–75)); *Jones v. Bernanke*, 685 F. Supp. 2d 31, 38 (D.D.C. 2010) (reasoning that the plaintiff's post-charge constructive discharge claim arose out of the employer's continuing retaliatory practice of issuing false and negative performance evaluations, when the plaintiff had "expressly averred" in the administrative filing that "negative performance evaluations were part of a continuing pattern of retaliation").

claims are based on underlying claims for constructive discharge, they must be dismissed.

### III.    Timeliness of Constructive Discharge for MHRA Claims

Likewise, to the extent that each of Zimney's state-law claims are based on underlying claims for constructive discharge, they must be dismissed as time-barred.

Under the MHRA, claims for unfair discrimination in employment practices must first be filed in an administrative charge "within one year after the occurrence of the practice" before they can be brought in a civil action. Minn. Stat. § 363A.28, subdiv. 3(a); *see* Minn. Stat. § 363A.33, subdiv. 1. The one-year clock for the MHRA "begin[s] on the date of the allegedly unfair or discriminatory act." *Smith v. Ashland, Inc.*, 250 F.3d 1167, 1172 (8th Cir. 2001) (citing Minn. Stat. § 363.06, subdiv. 3). The one-year clock may be tolled under the continuing violation doctrine if the charge alleges a continuing violation, so long as "at least one incident of [the challenged practice] occurred within the limitations period." *Ratfield v. Delta Air Lines, Inc.*, 686 F. Supp. 3d 780, 808 (D. Minn. 2023) (citing *Costilla v. State*, 571 N.W.2d 587, 593 (Minn. Ct. App. 1997)). But "discrete acts" are each their own unlawful employment practice that "resets the clock." *Id.* (citing *Morgan*, 536 U.S. at 113).

As discussed above, Zimney's allegation of constructive discharge was a discrete act distinct from her prior allegations of disability discrimination, sex discrimination, and retaliation. This discrete act of constructive discharge "reset the clock" and Zimney was

23

required to file a new charge within one year of August 2019, when the constructive discharge claim vested. *Id*. Because nothing in the pleadings suggests that Zimney filed any subsequent administrative charge relating to the alleged constructive discharge within one year of August 2019, the statute of limitations ran on Zimney's opportunity to bring such a claim. Minn. Stat. § 363A.28, subdiv. 3(a); Minn. Stat. § 363A.33, subdiv. 1. To the extent then that Zimney's MHRA claims rest on allegations of constructive discharge, they must also be dismissed.

## IV.    Pleading Sufficiency of Non-Constructive Discharge Claims

Ulta also seeks to dismiss the rest of Zimney's claims to the extent that they do not rest on a theory of constructive discharge for failing to plead a plausible claim for relief. The remainder of Zimney's failure-to-accommodate claims (Counts II and VI), retaliation and reprisal claims (Counts III and VII), and sex discrimination claims (Counts IV and VIII) each plead facts sufficient to survive Ulta's motion to dismiss.

To begin, these claims are not limited to claims of constructive discharge; they encompass claims for discrimination and retaliation, which were the bases of the June 2019 Charge. The Amended Complaint alleges a "non-exclusive" list of other (non-constructive discharge) adverse employment actions preceding the filing of the June 2019 Charge, including that: (1) Ulta's request for medical documentation was "a pretext" for discrimination and retaliation against Zimney; (2) Ulta "humiliated" Zimney by "escorting her off [the] premises" on or about May 29, 2019; (3) Ulta "denied . . . Zimney

24

full compensation" during the pendency of her suspension; and (4) Ulta "demoted" Zimney by materially changing her shifts and benefits.[13] (ECF No. 5 ¶¶ 75, 90.) The Amended Complaint also claims that Ulta engaged in sex discrimination by "suspending Ms. Zimney without pay, altering the terms, conditions, and privilege[s] of her successful employment up until May 29, 2019." (*Id.* ¶ 97.) Thus, the dismissal of the claims to the extent that they are based on allegations of constructive discharge does not amount to a dismissal of the claims in their entirety.[14]

### A.    *Failure-to-Accommodate Claims (Counts II and VI)*

The rest of Zimney's failure-to-accommodate claims are sufficiently alleged to withstand a motion to dismiss. She has plausibly shown that Ulta acted in bad faith by not providing accommodations that it could otherwise reasonably have provided.

---

[13] There were no facts alleged in the June 2019 Charge itself as to a "demotion." (*See* ECF No. 12-1 at 2.) Nonetheless, the EEOC Determination Letter itself recognized that Zimney had "reasonable cause" for a claim that Ulta discriminated and retaliated against her by "demoting her, in violation of the ADA and Title VII." (*Id*. at 6.) The parties have not briefed whether the allegation of demotion (as distinct from the allegation of constructive discharge) was administratively exhausted under the reasonable-relatedness exception to the normal rule that subsequent post-charge allegations require a filing of a new charge. The Court declines to reach this issue without any briefing by the parties.

[14] Because Ulta does not challenge Zimney's claims for disability discrimination under the ADA and MHRA (Counts I and V) to the extent that the claims are not premised on a theory of constructive discharge, (ECF No. 11 at 2; *see* ECF No. 15 at 28 n.4), these claims remain. This is so, even though the headers for each count were labeled as "Disability Discrimination & Constructive Discharge." (ECF No. 5 at 19, 27.) Viewing the allegations in the Amended Complaint in the light most favorable to Zimney, these Counts allege disability discrimination unrelated to any constructive discharge. (*Id*. ¶¶ 75–76, 103.)

The parties agree that the framework for a failure-to-accommodate claim under the ADA and the MHRA requires a plaintiff to plead that they were discriminated against on account of a disability and that the employer failed to accommodate the disability.[15] *Schaffhauser v. United Parcel Servs., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). To make out the case for disability discrimination, a plaintiff must plead that they: "(1) have a disability within the meaning of the ADA, (2) are a qualified individual under the ADA, and (3) suffered an adverse employment action due to their disability." *Mobley*, 53 F.4th at 456 (citation omitted and cleaned up). In addition, the plaintiff must plausibly show four elements that the employer failed to accommodate the disability:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Schaffhauser*, 794 F.3d at 906 (citation omitted). At the motion to dismiss stage, if the complaint plausibly alleges that a lack of good faith was a but-for cause of the lack of accommodation, the Court need not consider whether the accommodation would have created an undue hardship. *See Lee v. Seasons Hospice*, 696 F. Supp. 3d 572, 588 (D. Minn. 2023).

---

[15] The failure-to-accommodate claims under the ADA and the MHRA are each governed by the same framework and may be analyzed together. *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 456 n.4 (8th Cir. 2022).

Ulta does not dispute that Zimney adequately alleged disability discrimination. Rather, Ulta disputes the reasonable-accommodation prong, asserting that Zimney's pleading does not satisfy the third and fourth *Schaffhauser* elements. (ECF No. 11 at 23 ("Absent from the First Amended Complaint is any allegation that Ulta did not make a good faith effort to assist Ms. Zimney in seeking accommodations.").)

The Court disagrees. Zimney has pled allegations sufficient to state a claim at the motion to dismiss stage that Ulta acted in bad faith in failing to accommodate her disability. Zimney alleges that Ulta knew about her disability and that Ulta had approved reasonable accommodations for her disability, which were in place for four months. (ECF No. 5 ¶¶ 33–37.) In May 2019, Zimney requested a "small adjustment" to her accommodations for her pregnancy. (*Id*. ¶ 40.) Zimney alleges that Ulta then did not engage in a good-faith interactive process. Instead, Zimney claims Ulta: (1) rejected the pregnancy accommodation adjustment; (2) required "onerous medical documentation to substantiate what had already been in place;" and (3) "refused to accept already-existing medical documentation." (*Id*. ¶¶ 42, 46–47.) Zimney also alleges that after three months of back and forth—during which Zimney was "told that she could not return to work"— Ulta "ultimately caved" and "accept[ed] the medical documentation [she] had said she possessed from the beginning." (*Id*. ¶¶ 46, 59.)

Put differently, Zimney plausibly plead that Ulta acted in bad faith by requiring that Zimney submit particular medical documentation paperwork for the requested

accommodations before she could return to work, even though she had offered to provide alternative documentation, which was ultimately deemed to be sufficient. In addition, Zimney plausibly alleged that but for Ulta's lack of good faith, Ulta would have accepted those reasonable accommodations, and she would have not been placed on an effective suspension without full compensation from on or about May 29, 2019 to August 2019. This is enough to state a claim.[16]

### B.   Retaliation and Reprisal Claims (Counts III and VII)

Zimney's remaining claims that Ulta retaliated or reprised against her also sufficiently state a claim for relief under the ADA and the MHRA.

To make out a claim of retaliation and reprisal,[17] a plaintiff must show that: "(1) the plaintiff engaged in statutorily protected activity; (2) the employer took an adverse action against the plaintiff; and (3) there existed a causal connection between the adverse action and the protected activity." *Hustvet*, 910 F.3d at 412 (citation omitted). Under the third

---

[16] Ulta cites a series of cases for the proposition that "[c]ourts have recognized that similar circumstances and complaints about the nature of the interactive process do not support a failure-to-accommodate claim." (ECF No. 11 at 23 (citing *Sharbono v. N. States Power Co.*, 902 F.3d 891 (8th Cir. 2018); *Matos v. DeVos*, 317 F. Supp. 3d 489 (D.D.C. 2018), *aff'd*, No. 18-5281, 2019 WL 2563721 (D.C. Cir. June 3, 2019); *Weatherspoon v. Azar*, 380 F. Supp. 3d 65 (D.D.C. 2019)).) But each of the cases cited by Ulta were resolved on summary judgment, not on a motion to dismiss.

[17] The governing framework for a retaliation claim brought under the ADA and a reprisal claim brought under the MHRA are analogous. *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 412 (8th Cir. 2018); *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010).

element, the "plaintiff must allege but-for causation." *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017).

But the Eighth Circuit has instructed that a "simplified notice pleading standard" applies to employment retaliation claims, and that "summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). And even at the summary judgment stage, "[a] plaintiff can establish a causal connection between [her] complaints and an adverse action through circumstantial evidence, such as the timing of the two events." *Id.* at 373 (citing *Turner v. Gonzales*, 421 F.3d 688, 696–97 (8th Cir. 2005)). So, courts have accepted allegations of "temporal proximity between the protected activity and adverse action" as being "sufficient to create an inference of retaliation." *Ratfield*, 686 F. Supp. 3d at 806 (determining that a two-week temporal proximity between the protected activity and the adverse conduct could state a claim where there were also allegations of "comments and conduct that support an inference of a retaliatory motive"); *Wilson*, 850 F.3d at 373 (considering an allegation that plaintiff was the "victim of . . . retaliation, after having complained about discrimination" to be sufficient where there was just a six-week time span between the protected activity and the adverse conduct).

Zimney alleges that she engaged in protected activity when she (1) "opposed disability discrimination" in the form of Ulta's "quest for paperwork" to confirm her accommodations, and (2) requested "reasonable accommodations in the first place." (ECF

No. 5 ¶ 89.) Opposing an employer's action "based on a reasonable belief that [the] employer has engaged in discriminatory conduct," is a protected activity under the ADA. *Foster v. Time Warner Ent. Co.*, 250 F.3d 1189, 1194 (8th Cir. 2001) (citation omitted). Similarly, the Eighth Circuit considers that "merely request[ing] an accommodation" may also constitute protected activity. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 908 (8th Cir. 2010) (citing *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003)).

Zimney alleges that Ulta retaliated against her in response to her protected activity by "escorting her off [the workplace] premises" and denying her full compensation during a "pretextual" suspension. (ECF No. 5 ¶ 90.) The Eighth Circuit has recognized that a suspension without pay may constitute an adverse employment action. *Hasenwinkel v. Mosaic*, 809 F.3d 427, 433–34 (8th Cir. 2015) (in the context of an FMLA suit); *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006) (in the context of a Title VII suit); *contra Singletary v. Mo. Dep't of Corrs.*, 423 F.3d 886, 891 (8th Cir. 2005) (holding that being placed on *paid* leave is not an adverse action when the plaintiff "maintained his pay, grade, and benefits"). Zimney also alleges that Ulta's reasons for the suspensions were pretextual given that she had worked with the accommodations for four months. (ECF No. 5 ¶¶ 91–93.) At this stage, Zimney sufficiently alleged at least one adverse retaliatory employment action.[18]

---

[18] Because this Court need not decide at this stage whether any of Ulta's other alleged conduct legally constitutes an adverse employment action, it declines to do so.

Finally, Zimney provides circumstantial allegations of a causal nexus between the protected activities and the adverse action of being suspended without full compensation. Zimney alleges a close temporal proximity of just one day between when she engaged in protected activities and when she was ousted from the workplace and suspended without full compensation.[19] (ECF No. 5 ¶¶ 40, 42, 46; ECF No. 12-1 at 2.) Zimney also offers allegations to support an inference of a retaliatory motive that Ulta managers "harbored animus and skepticism" about her disability accommodations and questioned "the authenticity of Ms. Zimney's need for a service dog." (ECF No. 5 ¶¶ 44–45.) Zimney's remaining retaliation claims are thus sufficient to state a claim.

### C.    Sex Discrimination Claims (Counts IV and VIII)

As for Zimney's remaining sex discrimination claims, Zimney also states a plausible claim for relief under Title VII and the MHRA.

To state a claim for sex discrimination under Title VII, Zimney must plausibly show that: "(1) she was a member of the protected group; (2) she was qualified to perform

---

[19] In in its opposition brief, Zimney writes that the ouster and suspension took place "within **one day**" of Zimney's request to modify her accommodations. (ECF No. 15 at 42 (emphasis in original).) But this exact factual allegation does not appear on the face of the Amended Complaint. Rather, the Amended Complaint merely mentions that "[i]n May 2019" Zimney made the accommodation adjustment request, and then "[o]n or about May 29, 2019," Zimney was escorted off the property. (ECF No. 5 ¶¶ 40, 46.) But the June 2019 Charge does include such an express allegation. (ECF No. 12-1 at 2.) And because the Court may consider documents embraced by the Amended Complaint or that are public records, the Court recognizes this allegation. See Henke, 698 F. Supp. 2d at 1122.

the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination."[20] *Bell*, 60 F.4th at 1203 (citation omitted).

On the fourth element, a plaintiff can establish an inference of discrimination by showing "that she was treated less favorably than similarly-situated employees who were not in her protected class." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993–94 (8th Cir. 2011) (citation omitted). But that is just "[o]ne way" that a plaintiff can make a prima facie showing to support an inference of discrimination. *Id.*; *see also López Prater v. Trs. of Hamline Univ. of Minn.*, 693 F. Supp. 3d 1009, 1026 (D. Minn. 2023) (noting, in a religious discrimination case, that "comparator evidence is just one way to show an inference of discrimination, not the only way"). For example, the Eighth Circuit has recognized that a sex discrimination plaintiff may satisfy this element by showing a close temporal proximity between a protected disclosure and an adverse employment action. *Wierman*, 638 F.3d at 994 (citing *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113–14 (8th Cir. 2001)).

This is because "only a minimal showing" is required from a plaintiff under this framework before an employer is required "to explain its actions." *Id.* (citing *Smith v. Allen Health Sys.*, 302 F.3d 827, 835 (8th Cir. 2002)). And at the pleading stage, the

---

[20] The standard for stating a claim for sex discrimination is the same under the MHRA as it is under Title VII. *See Nelson v. Lake Elmo Bank*, 75 F.4th 932, 937 (8th Cir. 2023) (citing *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012) (addressing MHRA claim).

complaint need not foreclose all nondiscriminatory justifications for a defendant's conduct. *Wilson*, 850 F.3d at 373 ("Requiring a plaintiff to rule out every possible lawful explanation for the conduct [s]he challenges . . . would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." (citation omitted)).

Ulta only challenges whether Zimney satisfied the fourth element of a sex discrimination claim, arguing that Zimney insufficiently pled circumstances to permit an inference of discrimination.[21] Ulta argues Zimney has not met the pleading burden because the Amended Complaint "does not allege that Ulta treated Ms. Zimney differently than any non-woman or non-pregnant employee," and "the more obvious explanation for Ulta's action" is that "Ulta was responding to Ms. Zimney's request for accommodations and engaging in the interactive process." (ECF No. 11 at 27, 28.)

But Ulta misconstrues Zimney's pleading burden; *Wierman* illustrates this point. In *Wierman*, the Eighth Circuit held that the plaintiff made out a prima facie claim of sex discrimination from merely making the "suspicious" showing of a "temporal proximity

---

[21] Zimney's Amended Complaint also satisfies the first three elements. First, gender status is a protected classification under Title VII. *In re Union Pac. R.R. Emp. Pracs. Litig.*, 479 F.3d 936, 944 (8th Cir. 2007). Second, Zimney alleged that she met Ulta's workplace expectations prior to May 29, 2019. (ECF No. 5 ¶ 37.) And third, Zimney claimed to have suffered an adverse employment action by being suspended without full compensation after disclosing her pregnancy and requesting an adjustment to her disability accommodations to account for her pregnancy. (*Id*. ¶ 97.)

of four days" elapsing between when the plaintiff disclosed her pregnancy to her superior and an adverse employment action—in that case, termination. 638 F.3d at 994. The Eighth Circuit reached that conclusion even though the court also determined that the plaintiff "d[id] not identify any similarly-situated individuals for comparison" on her sex discrimination claims. *Id*. Here, Zimney has alleged a suspicious temporal proximity of just one day elapsing between when she disclosed her pregnancy and when she was suspended without pay. (ECF No. 5 ¶ 97; ECF No. 12-1 at 2.) Thus, even though Zimney has not made any direct comparator allegations in the Amended Complaint, Zimney has sufficiently stated a claim for sex discrimination at this stage.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Ulta's motion to dismiss (ECF No. 9) is GRANTED IN PART and DENIED IN PART as follows:

1. The motion is GRANTED insofar as Zimney's federal and state claims are premised on a claim of constructive discharge; and

2. The motion is DENIED in all other respects.

Dated: January 15, 2025                BY THE COURT:

                                       s/Nancy E. Brasel
                                       Nancy E. Brasel
                                       United States District Judge